UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CASEY CASAS,

        Plaintiff,

    v.

JOHN PANTALENA et al.,

        Defendants.

24-CV-1068-LJV
DECISION & ORDER

---

On November 4, 2024, the plaintiff, Casey Casas, commenced this action under the Lanham Act, the New York General Business Law, and New York State common law against John Pantalena, Eric Pearson, Mister Sizzles Expansion LLC, and Mister Sizzles Real Estate Holdings LLC.  Docket Item 1.  More specifically, Casas brought a claim for trademark infringement under section 32 of the Lanham Act, 15 U.S.C. § 1114; a claim for trademark infringement under New York State common law; and a claim for trademark dilution under New York General Business Law § 360.  *Id.*  The next day, Casas moved for a preliminary injunction and temporary restraining order "enjo[in]ing the defendants from their ongoing unauthorized and infringing use of [Casas]'s registered trademark."  *See* Docket Item 3-1 at ¶ 2.[1]

A short time later, the parties appeared before the Court to discuss Casas's motion, and the Court "instructed the parties to prepare a joint proposed temporary restraining order."  Docket Item 10.  But both sides were unable to agree to the contents

---

[1] Throughout this decision, any page numbers in docket citations refer to ECF pagination.

of such an order, so they again appeared before the Court. *See* Docket Item 14. This time, the Court directed both sides "to submit an agreed upon order" simply "maintain[ing] the status quo." *See id.* The Court told the parties that if they could not agree on that, the matter would be referred to a magistrate judge "to make findings of fact." *Id.*

Despite that instruction, the parties did not submit a joint proposed temporary restraining order. So, after Pearson and Pantalena separately answered the complaint, *see* Docket Items 12 and 16, the Court referred the matter to United States Magistrate Judge Michael J. Roemer for all proceedings under 28 U.S.C. § 636(b)(1)(A), Docket Item 17. Judge Roemer then ordered the parties to "jointly complete . . . [a] case management order" within 30 days, *see* Docket Item 18, which the parties did not do.

Having heard nothing for several months, this Court held a status conference on June 16, 2025, and Casas informed the Court that she had settled her claims against Pantalena. *See* Docket Item 23. Casas then informally told the Court that she was withdrawing her motion for injunctive relief against Pantalena and Mister Sizzles Real Estate Holdings LLC but asked the Court to decide the motion as it related to Pearson and Mister Sizzles Expansion LLC. *See* Docket Item 32.

After Pantalena and Mister Sizzles Real Estate Holdings LLC were removed as parties, Docket Item 26, Pearson responded to Casas's motion for a preliminary injunction and temporary restraining order, Docket Item 28, and Casas replied, Docket Item 29. For the reasons that follow, Casas's motion for a preliminary injunction and temporary restraining order, Docket Item 3, is denied without prejudice.

**BACKGROUND**[2]

When she commenced this action, Casas was "a part owner and one of the operators" of a restaurant named Mister Sizzle's in Buffalo. *See* Docket Item 3-4 at ¶ 2. Since its opening, "Mister Sizzle's ha[d] established itself as a prominent burger restaurant . . . serving burgers, cocktails, and other food items." *Id.* Casas is "the registered owner of United States Trademark Registration No. 6922042 for 'MISTER SIZZLE'S BURGERS BEER SHAKES,' which was filed on October 28, 2021, and registered on December 13, 2022." *Id.* at ¶ 5.

In 2023, Casas and her husband reached out to Pearson "affirming their desire for [Pearson] to become a partner in" a proposed Mister Sizzle's location on Transit Road in Clarence, New York. *See* Docket Item 28 at ¶¶ 3, 5. Pantalena formed Mister Sizzles Expansion LLC in September 2022 to operate that restaurant with Casas and Pearson. *Id.* at ¶¶ 3, 15.[3] Pearson's stake in that entity "was to be a minority interest based on [Pearson's] collaborative contributions to the business and monetary support."

---

[2] The following facts are taken from the complaint, Docket Item 1; the declarations and exhibits filed by Casas in support of her motion for a preliminary injunction and temporary restraining order, Docket Item 3; Pearson's response to that motion, Docket Item 28; and Casas's reply, Docket Item 29. *See Park Irmat Drug Corp. v. Optumrx, Inc.*, 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016) ("In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." (citation omitted)). The Court notes when facts appear to be disputed.

[3] In her initial affidavit in support of her request for a preliminary injunction and temporary restraining order, Casas said that "[i]t *recently* came to my attention that defendants have formed two entities using my trademark: Mister Sizzles Expansion LLC and Mister Sizzles Real Estate Holdings LLC." Docket Item 3-4 at ¶ 6 (emphasis added). She also stated that she was not a member of either entity, *id.* at ¶ 10, and that those two entities' "use of the Mister Sizzle's name and logo" was "unauthorized," Docket Item 1 at ¶ 16.

3

*See id.* at ¶ 15.  Pearson is "not a member, manager[,] and/or officer of Mister Sizzles Expansion LLC."  *Id.*[4]

Pearson "invested approximately $700,000.00 into restaurants managed by [Casas] and her associates."  *See id.* at ¶ 4.  Casas "represented" to Pearson that he "would receive equity ownership in" the Transit Road location and another Mister Sizzle's location in Hamburg, New York.  *See id.* at ¶¶ 5, 9.  Various activities related to the construction of the Transit Road location and the establishment of Mister Sizzles Expansion LLC's joint bank account then took place in 2023 and early 2024.  *See id.* at ¶ 16.  The parties' submissions hint that, around this point, their relationship began to sour.  *See, e.g.*, *id.* at ¶ 19 ("Because of the souring relationship between [Casas] and . . . Pantalena, all efforts to establish and grow Mister Sizzles Expansion LLC ceased."); Docket Item 29 at ¶ 13 (stating that "Pearson took concrete steps to take over Mister Sizzle's [sic] business operations" that included "attempt[ing] to sign new leases" and "contact[ing] past employees of Mister Sizzle's and ask[ing] them to put a team together to take over the business").[5]

Sometime after filing her motion for a preliminary injunction and temporary restraining order, Casas rebranded the restaurant locations in Hamburg and Buffalo as "Augie's."  *See* Docket Item 28 at ¶¶ 9, 25.  Neither Mister Sizzles Expansion LLC nor

---

[4] Casas disputes this, pointing to unexecuted business documents naming Pearson as the owner and sole member of Mister Sizzles Expansion LLC.  *See* Docket Item 29 at ¶¶ 8-9.

[5] This assertion was first made in Casas's reply affidavit in support of her motion for a preliminary injunction and temporary restraining order.  As such, Pearson has not had the opportunity to present an affidavit or other evidence in rebuttal.  Nevertheless, as discussed below, even crediting this statement, it is far from sufficient to satisfy the demanding standard to obtain a preliminary injunction and temporary restraining order.

4

Mister Sizzles Real Estate Holdings LLC do "any business today." *See id.* at ¶ 20. "[N]either entity is utilizing the Mister Sizzle's trademark." *Id.*[6] And "all materials that were purchased for the Mister Sizzle's Transit Road[7] property are located in a storage unit purchased and paid for, at least in part, by . . . Pearson." Docket Item 29 at ¶ 14.

## LEGAL PRINCIPLES

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.* at 24. In fact, preliminary injunctions "should not be routinely granted." *Hanson Tr. PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) (quoting *Med. Soc. of State of N.Y. v. Toia*, 560 F.2d 535, 537 (2d Cir. 1977)). "The standard for issuance of a temporary restraining order is identical to that for issuance of a preliminary injunction." *Bimber's Delwood, Inc. v. James*, 496 F. Supp. 3d 760, 771 (W.D.N.Y. 2020).

---

[6] In her reply affidavit, Casas says that "Pearson has tried to use [her] trademark in the past" and that "[h]is control of an entity bearing [her] trademark name . . . creates exactly the type of consumer confusion that trademark law is designed to prevent"; she also says that Pearson has "attempt[ed] to secure leases and recruit employees for competing operations." *See* Docket Item 29 at ¶ 17.

[7] When the parties first appeared before the Court, Casas raised concerns about signage outside the Transit Road location. *See* Docket Item 9 at 10. Casas does not mention this signage in her reply affidavit. *See generally* Docket Item 29.

5

**DISCUSSION**

Casas has moved for a preliminary injunction and temporary restraining order "enjo[in]ing the defendants from their ongoing unauthorized and infringing use of [Casas]'s registered trademark." See Docket Item 3-1 at ¶ 2. More specifically, Casas asks the Court to "[p]reliminarily and permanently enjoin[ ] and restrain[ the] defendants from using the Mister Sizzle's name and trademark" and to "[r]equir[e the] defendants to change the corporate names of Mister Sizzles Expansion LLC and Mister Sizzles Real Estate Holdings LLC to remove any reference to Mister Sizzle's." See Docket Item 3 at 1.[8] Given the removal of Mister Sizzles Real Estate Holdings LLC as a defendant in this action, Casas presumably seeks the latter relief only against Mister Sizzles Expansion LLC;[9] so Casas is asking the Court to "enjoin[ ] and restrain" that entity and Pearson "from using the Mister Sizzle's name and trademark" and require it to change its name.[10] See id.

---

[8] Casas also requested expedited consideration of her motion. See Docket Item 3 at 2. That request is denied as moot.

[9] Casas filed an affidavit of service stating that her complaint and motion for a preliminary injunction and temporary restraining had been served on Mister Sizzles Expansion LLC's registered agent. See Docket Item 7. Mister Sizzles Expansion LLC, however, has not appeared in this action or otherwise responded to Casas's motion.

[10] Requiring Mister Sizzles Expansion LLC to change its name, unlike the other requested relief, would make the defendants do something. The Second Circuit has instructed that a mandatory injunction—that is, an injunction commanding a positive act, as opposed to one that merely maintains the status quo by prohibiting certain acts— "should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" See Tom Doherty Assocs., Inc. v. Saban Ent., Inc., 60 F.3d 27, 34 (2d Cir. 1995) (quoting Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)). Because Casas's motion falls far short of demonstrating a likelihood of success on the

In support of her motion, Casas says that because she has demonstrated a likelihood of confusion between Mister Sizzles Expansion LLC and her "original Mister Sizzles's restaurants," she therefore has established that she is likely to suffer irreparable harm without injunctive relief.  *See* Docket Item 29-3 at 5-6; *see also* Docket Item 3-6 at 7 ("In the context of trademark and unfair competition injunctions, the requirement of irreparable harm carries no independent weight, as we have held that a showing of likelihood of confusion . . . establishes irreparable harm." (quoting *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997)).  For his part, Pearson argues that Casas has not established a likelihood of confusion and that, even if she had, the presumption of irreparable harm that Casas cites is based on stale caselaw, at least in this Circuit.  *See* Docket Item 28-7 at 8-10, 12-14.

In trademark infringement cases, a court's inquiries into the likelihood of success on the merits, irreparable harm, and the likelihood of confusion often overlap.  *See, e.g.*, *Guru Teg Holding, Inc. v. Maharaja Farmers Mkt., Inc.*, 581 F. Supp. 3d 460, 468-69 (E.D.N.Y. 2021) (discussing legal framework for analyzing motion for preliminary injunction in trademark infringement case).  Moreover, there have been recent statutory developments in this area.  So the Court provides a brief overview of the relevant standards before addressing the specific criteria.

"The Lanham Act prohibits any person 'without the consent of the registrant' from using any 'reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or

---

merits or irreparable harm, any distinction between the standard for a mandatory injunction and one for a prohibitory injunction is irrelevant to this Court's decision.

7

service[s] on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.'" *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 298 (S.D.N.Y. 2021) (quoting 15 U.S.C. § 1114(1)(a)).  Thus, "[t]o establish a Lanham Act infringement claim, [a] plaintiff must establish (1) that 'the plaintiff's mark is entitled to protection,' and (2) that [the] 'defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.'" *Guru Teg Holding*, 581 F. Supp. 3d at 468 (quoting *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003)).[11]

"The key element of a trademark infringement suit . . . is that there is a likelihood of confusion or, in other words, that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." *Two Hands IP*, 563 F. Supp. 3d at 299 (citation and internal quotation marks omitted).  "[C]ourts evaluate the likelihood of confusion using the test articulated in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), which balances a nonexclusive list of eight factors." *DJ Direct, Inc. v. Margaliot*, 512 F. Supp. 3d 396, 409 (E.D.N.Y. 2021).  Those enumerated factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7)

---

[11] "Trademark infringement under the Lanham Act . . . and under New York common law are adjudged using the same standard." *Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 571 F. Supp. 3d 185, 214 (S.D.N.Y. 2021); *see also AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 479 (S.D.N.Y. 2020) ("The elements of a successful New York common law claim of trademark infringement parallel the elements required for a Lanham Act trademark infringement claim.").

respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (citing *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005)).

"Following the enactment of the Trademark Modernization Act of 2020, a plaintiff seeking a preliminary injunction is entitled to a rebuttable presumption of irreparable harm upon a court's finding a likelihood of success on the merits." *Two Hands IP*, 563 F. Supp. 3d at 300 (citing 15 U.S.C. § 1116(a)).[12]  Therefore, "if (1) the plaintiff establishes that it has a likelihood of success on the merits (that is, it establishes both the validity of its mark and a likelihood of confusion), and (2) the defendant fails to rebut the presumption, the plaintiff satisfies its burden of showing irreparable harm." *Two Hands IP*, 563 F. Supp. 3d at 300 (emphasis omitted).[13]

---

[12] In his response, Pearson cites the Second Circuit's decision in *Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010), and says that the "presumption of irreparable harm upon a showing of likelihood of confusion . . . no longer exists." *See* Docket Item 28-7 at 9 (emphasis omitted).  Although *Salinger* created uncertainty about whether a presumption of irreparable harm was still "good law," *see, e.g.*, *Vox Amplification Ltd. v. Meussdorffer*, 2014 WL 558866, at *5 (E.D.N.Y. Feb. 11, 2014) *report and recommendation adopted*, 50 F. Supp. 3d 355 (E.D.N.Y. 2014), that uncertainty seems to have been put to rest by the passage of the Trademark Modernization Act, *see Pet Life, LLC v. KAS Pet, LLC*, 690 F. Supp. 3d 41, 47 n.15 (E.D.N.Y. 2023); *see also Salinger*, 607 F.3d at 80 (noting that a court "must not . . . presume that the plaintiff will suffer irreparable harm (unless such a departure from the long tradition of equity practice was intended by Congress)." (citation and internal quotation marks omitted)).

[13] "The [rebuttable] presumption of irreparable harm does not apply if 'the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief.'" *Guru Teg Holding, Inc. v. Maharaja Farmers Mkt., Inc.*, 581 F. Supp. 3d 460, 469 (E.D.N.Y. 2021) (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)).  In his response, Pearson also argues that Casas is not entitled to a preliminary injunction and temporary restraining order due to her delay. *See* Docket Item 28-7 at 10.  Although Pearson's submissions raise serious doubt about the truth of Casas's statement that it had "recently" come to her "attention that defendants . . . formed two entities using my trademark: Mister Sizzles Expansion LLC and Mister Sizzles Real Estate Holdings LLC," *see* Docket Item 3-4 at ¶ 6, Casas's motion fails for the other

Given all that, to establish a likelihood of success on her trademark infringement claims Casas must establish that her trademark is entitled to protection and that Pearson and Mister Sizzles Expansion LLC are using that trademark in a manner likely to confuse consumers. Only then can she receive the benefit of the presumption of irreparable harm that she cites in her briefing—a presumption that can be rebutted.

Although Casas barely acknowledges it in her submissions, she also has brought a claim for trademark dilution under New York law—a claim that involves a different analysis for establishing a likelihood of success on the merits. Section 360 of the New York General Business Law, under which Casas brings her claim, entitles a plaintiff to injunctive relief when there is a "[l]ikelihood . . . of dilution of the distinctive quality of a mark or trade name." N.Y. Gen. Bus. Law § 360-l. "Dilution is grounded on the idea that a trademark can lose its ability . . . to clearly and unmistakably distinguish one source through unauthorized use." *Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497, 506 (2d Cir. 1996) (citation and internal quotation marks omitted).

"Unlike claims for trademark infringement, no proof of 'competition between the parties or . . . confusion as to the source of goods or services' is required" for a dilution claim. *Disney Enters., Inc. v. Sarelli*, 322 F. Supp. 3d 413, 439 (S.D.N.Y. 2018) (quoting N.Y. Gen. Bus. Law § 360-l). A plaintiff establishes dilution by showing "(1) ownership of a distinctive mark[] and (2) a likelihood of dilution." *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 278 (S.D.N.Y. 2022) (citing *Hormel Foods*, 73 F.3d at 506).

---

reasons discussed below, and the Court therefore need not and does not address this argument.

Dilution can occur through either blurring or tarnishment. *See Khan v. Addy's BBQ LLC*, 419 F. Supp. 3d 538, 559 (E.D.N.Y. 2019). Blurring "occurs 'where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product.'" *New York Stock Exch., Inc. v. New York, New York Hotel LLC*, 293 F.3d 550, 558 (2d Cir. 2002) (quoting *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994)). "Tarnishment occurs where a trademark is 'linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context,' with the result that 'the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.'" *Id.* (quoting *Deere*, 41 F.3d at 43).

In her complaint, Casas does not specify whether she is asserting dilution by blurring or dilution by tarnishment, merely stating that the defendants' "threatened dilution will impair the distinctive quality of [Casas]'s trademark and damage [Casas]'s business reputation." *See* Docket Item 1 at ¶ 40. But given the concerns raised in Casas's motion that "the public w[ould] associate [her] trademark with . . . Pantalena's business dealings and legal disputes," *see* Docket Item 3-4 at ¶ 20, the Court presumes that she intends to raise a claim of dilution by tarnishment. And to establish a likelihood of success on the merits of that claim, she must establish a likelihood that her "mark will suffer negative associations through [the] defendant[s'] use." *See Khan*, 419 F. Supp. 3d at 560 (quoting *Hormel Foods*, 73 F.3d at 507 (internal quotation marks omitted)).

11

Casas's trademark infringement and dilution arguments can be boiled down to this: because Mister Sizzles Expansion LLC has a name that is almost identical[14] to her trademark, there is a likelihood of confusion between the two, a likelihood that the public will associate her trademark with the since-dismissed Pantalena's business disputes and dealings, and therefore a presumption of irreparable harm. As will be explained below, Casas has not established a likelihood of success on her trademark infringement or trademark dilution claims. And even if she had, she falls far short of demonstrating that she will be irreparably harmed in the absence of the injunctive relief she requests.

## I.  LIKELIHOOD OF SUCCESS

### A.  Trademark infringement

As discussed above, the likelihood of success inquiry for a trademark infringement claim has three different aspects: the protectability of the mark, a defendant's use of the mark, and the likelihood of confusion. *See Guru Teg Holding*, 581 F. Supp. 3d at 468.

As a preliminary matter, Pearson "does not concede that [Casas] owns the trademark at issue," Docket Item 28-7 at 12 n.1, but he does not otherwise dispute this element. In her motion, Casas states that she is the registered owner of the trademark "MISTER SIZZLE'S BURGERS BEER SHAKES," Docket Item 3-4 at ¶ 5, and provides what appears to be a certificate of registration from the United States Patent and Trademark Office ("USPTO") that lists her as its owner, Docket Item 3-2 at 2-3. Because "[a] certificate of registration from the USPTO is considered prima facie

---

[14] The Court notes that Mister Sizzles Expansion LLC does not have the apostrophe that is in the trademarked MISTER SIZZLE'S BURGERS BEER SHAKES.

evidence of a trademark's validity," *City of New York v. Lopez*, 2021 WL 6063839, at *2 (S.D.N.Y. Dec. 21, 2021) (citing *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999)), the Court finds that Casas has established that her trademark is entitled to protection.

Pearson says that even if Casas is the owner of a protected mark, she still cannot establish a likelihood of success on the merits of her trademark infringement claims because neither he nor anybody else (including Casas) is actively using the mark, let alone using it "in commerce." Docket Item 28-7 at 12-14. Based on the record before it, this Court agrees.

To establish trademark infringement, "a plaintiff must show that the defendant used its mark in commerce." *Lopez*, 2021 WL 6063839, at *2 (citing 15 U.S.C. § 1114(1)(a)). Before even reaching the question of whether the use of a mark was in commerce, "'use' must be decided as a threshold matter." *See 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 412 (2d Cir. 2005).[15] Although "any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark." *See id.*; *see also id.*

---

[15] The Court acknowledges that "there is some question about the viability" of the Second Circuit's holding in *1-800 Contacts* that "a defendant's conduct is not actionable under the Lanham Act unless it falls within the . . . [statutory] definition of 'use in commerce.'" *See North Star IP Holdings, LLC v. Icon Trade Serv., LLC*, 710 F. Supp. 3d 183, 206 (S.D.N.Y. 2024) (quoting *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407-08 (2d Cir. 2005)). But "the Second Circuit has not overruled *1-800 [Contacts]*, so its rule remains binding." *North Star IP Holdings*, 710 F. Supp. 3d at 206. Moreover, because Casas cannot establish the threshold requirement of use, let alone use in commerce, whether or not *1-800 Contacts* is still good law is not determinative in any way.

(noting that "use," "in commerce," and "likelihood of confusion" are "three distinct elements of a trademark infringement claim").

Here, it is unclear whether Casas has satisfied even the threshold requirement of use. Although Mister Sizzles Expansion LLC has presumably "used" the trademark by virtue of its creation and name, Pearson's involvement in that has not been established. Moreover, all that Casas otherwise says about Pearson is a stray reference to his "contact[ing] past employees of Mister Sizzle's and ask[ing] them to put a team together to take over the business," Docket Item 29 at ¶ 13, making it difficult to see how exactly he has "used" the trademark

So from the record before the Court, the only apparent "use" of the trademark is that an entity—one of two remaining defendants—was created with a name closely matching Casas's trademark. Pearson, the other remaining defendant, says that he is not "a member, manager[,] and/or officer" of that entity, Docket Item 28 at ¶ 15, while Casas says that he may be its sole member, Docket Item 29 at ¶¶ 8-9. But regardless, Casas does not allege the entity's activities, or Pearson's connection to them; indeed, she alleges only its existence.

What is more, even assuming that Casas has established the trademark's use by both remaining defendants, she has not established its "use in commerce." Casas's discussion of the entity's creation and Pearson's contact with past employees—the activity about which she complains—does not even mention consumers. And "[i]n determining whether [a] plaintiff[ ] ha[s] satisfied the 'use in commerce' requirement, [courts] ask whether the trademark has been displayed to consumers in connection with a commercial transaction." *North Star IP Holdings, LLC v. Icon Trade Servs., LLC*, 710

14

F. Supp. 3d 183, 206-07 (S.D.N.Y. 2024) (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 306 (2d Cir. 2013)).

Even under the "sweeping reach" of the term "use in commerce," *North Star IP Holdings*, 710 F. Supp. 3d at 207 (citation omitted), Casas's allegations establish only that an entity named Mister Sizzles Expansion LLC was created and that Pearson, who may be connected to that LLC, at some time in the past contacted former *employees* of Mister Sizzle's about taking over the restaurant. But Mister Sizzles Expansion LLC's connection to that interaction is unclear; moreover, Casas does not suggest how consumers were involved in any way. And that is plainly insufficient to demonstrate a likelihood of success on the merits of her trademark infringement claim. *Cf. Felix the Cat Prods., Inc. v. California Clock Co.*, 2007 WL 1032267, at *4 (S.D.N.Y. Mar. 30, 2007) ("The mere assertion of trademark infringement, without any factual allegations of the nature of the infringement, simply does not give [d]efendants fair notice of the claims against them.").

Furthermore, even if Casas had established that Pearson or Mister Sizzles Expansion LLC had used or is using her trademark in commerce, the evidence she introduces, which consists of little more than her own affidavit stating that "the defendants' unauthorized use of my trademark" is causing "confusion among consumers," Docket Item 3-4 at ¶ 12, falls woefully short of what is needed to establish a likelihood of consumer confusion. *See Rodriguez v. Redbubble, Inc.*, 2023 WL 6294180, at *5 (S.D.N.Y. Sept. 27, 2023) (dismissing Lanham Act trademark infringement claims where "[p]laintiff pleads no facts bearing on the strength of his trademark, such as allegations about 'advertising expenditures, consumer studies

linking the mark to a source, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and . . . exclusivity of the mark's use'" (quoting *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 329 (2d Cir. 2020)).  In fact, the Court finds it difficult to envision how a consumer could possibly be confused in a situation like this where Casas is not even using the Mister Sizzle's trademark and Mister Sizzles Expansion LLC is not conducting any business.

      B.      **Trademark Dilution**

Casas fares no better with her trademark dilution claim.

As discussed earlier, Casas appears to claim dilution by tarnishment, "[t]he sine qua non of [which] is a finding that [the] mark will suffer negative associations through [a] defendant's use."  *See Hormel Foods*, 73 F.3d at 507.  But because the trademark does not seem to be in active use by anyone, it is entirely unclear to the Court what negative associations Casas could suffer—that is, how anyone would associate her trademark with anything negative when the entity about which she complains is not conducting any activities.  Moreover, as Pearson notes, *see* Docket Item 28-7 at 10, Casas refers only to the reputation of the since-dismissed Pantalena in connection with her dilution claim, *see, e.g.*, Docket Item 3-4 at ¶ 19 ("I am gravely concerned that any association between the Mister Sizzle's name and trademark and defendant John Pantalena will irreparably damage and devalue my trademark rights given his unsavory reputation in the local business community and the various legal disputes in which he is embroiled.").  And so it also is unclear how associating the trademark with Pearson or an inactive business entity could cause negative associations.

16

Casas therefore has failed to establish a likelihood that her New York state law trademark dilution claims will succeed on the merits.

## II.  IRREPARABLE HARM

Finally, even if Casas had established a likelihood of success on her claims, her motion still would fail because she has not demonstrated that she will suffer irreparable harm in the absence of injunctive relief.

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transportation Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)).  In support of her motion, Casas says that "trademark infringement itself constitutes irreparable harm sufficient to justify imposing injunctive relief" and that showing a likelihood of confusion establishes irreparable harm.  *See* Docket Item 29-3 at 5-6 (citing *Genesee Brewing Co.*, 124 F.3d at 142).  But as noted above, Casas needed to establish both her trademark's "use in commerce" and a likelihood of confusion to trigger the presumption of irreparable harm.  Because she has not done that, the rebuttable presumption does not apply.

And even if Casas had established a likelihood of confusion, it is entirely unclear to the Court how she would suffer irreparable harm in a scenario where nobody appears to be actively using the trademark at issue.  Although Casas argues that "[t]he ongoing existence of entities bearing [her] trademark name, combined with . . . Pearson's documented attempts to compete using those entities, create immediate and irreparable harm to [her] trademark rights," *see* Docket Item 29-3 at 6, the only evidence she offers are her conclusory statements that she will be harmed by the association of her

17

trademark to the reputation of the since-dismissed Pantalena, *see, e.g.*, Docket Item 3-4 at ¶ 20.  As courts in this Circuit repeatedly have held in similar cases—even in cases where the allegations are more relevant than those here—conclusory statements are insufficient to demonstrate irreparable harm.  *See, e.g.*, *Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*, 2011 WL 497978, at *6 (S.D.N.Y. Feb. 10, 2011) ("[C]onclusory statements of loss of . . . goodwill constitute an insufficient basis for a finding of irreparable harm."); *Atari Interactive, Inc. v. Printify, Inc.*, 714 F. Supp. 3d 225, 238 (S.D.N.Y. 2024) (finding evidence of irreparable harm "consist[ing] entirely of a few conclusory paragraphs" in declaration insufficient to establish irreparable harm).

There may come a time when Mister Sizzles Expansion LLC begins to do something.  And if that something infringes or dilutes Casas's trademark, she may then be entitled to relief.  But that is a question for another day.  For now, Casas has failed to demonstrate a likelihood of success on the merits or irreparable harm in the absence of preliminary injunctive relief, and her motion is therefore denied.[16]

## CONCLUSION

For the reasons discussed above, Casas's motion for a preliminary injunction and temporary restraining order, Docket Item 3, is DENIED without prejudice.

---

[16] Because Casas has failed to demonstrate a likelihood of success on the merits or irreparable harm in the absence of preliminary injunctive relief, the Court does not address the remaining factors necessary for the issuance of a preliminary injunction or temporary restraining order.  *See Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 486 (W.D.N.Y. 2018).

SO ORDERED.

Dated:   September 26, 2025
        Buffalo, New York

                                             ***/s/ Lawrence J. Vilardo***
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE